1
2
3
4
5
6
7
8                 **UNITED STATES DISTRICT COURT**
9                 **SOUTHERN DISTRICT OF CALIFORNIA**
10

11 | COUNCIL ON AMERICAN-ISLAMIC | CASE NO. 09-CV-823-IEG (CAB)
   | RELATIONS, CALIFORNIA; and EDGAR |
12 | HOPIDA, |

13 |                          Plaintiffs, | ORDER GRANTING
   |          vs. | DEFENDANTS' MOTION FOR
14 | | SUMMARY JUDGMENT
   | | FOLLOWING *IN CAMERA* REVIEW
15 |
16 | FEDERAL BUREAU OF |
   | INVESTIGATION; and DEPARTMENT OF |
17 | JUSTICE, | [Doc. No. 22]
   |                          Defendants. |
18

19        This is an action filed under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

20 challenging Defendants' decision to redact and withhold certain documents in response to

21 Plaintiffs' FOIA request. Following complete briefing and oral argument, the Court previously

22 granted in part Defendants' Motion for Summary Judgment.  The Court found the scope of the

23 agencies' search for the responsive documents was adequate, and granted summary judgment on

24 that issue.  However, the Court reserved judgment on the agencies' assertion of exemptions and

25 ordered a limited *in camera* review of the disputed documents.  [Doc. No. 39.]

26        Pursuant to the Court's directions, Plaintiffs identified a representative sample of 100

27 pages of the 312 pages Defendants produced in redacted form.  [Doc. No. 40.]  Thereafter,

28 Defendants produced to the Court for *in camera* review the unredacted version of those 100 pages

as well as the 153 pages of documents withheld in full. Following *in camera* review, the Court concludes the Defendants justifiably withheld the documents from production under the asserted FOIA exemptions. Therefore, the Court GRANTS Defendants' motion for summary judgment.

## BACKGROUND

The factual and procedural background of this case is fully set forth in the Court's June 29, 2010 order. In short, the Council on American-Islamic Relations ("CAIR"), its San Diego-based Public Relations Director Edgar Hopida ("Hopida"), and the Islamic Center of San Diego (collectively, "Requestors") sent joint FOIA requests to the FBI and Justice Department (collectively, "Defendants") on July 14, 2008. [Doc. No. 25-2 at 2-15]. The requests were triggered by a *San Diego Union-Tribune* article that described a security breach at Camp Pendleton, in which staff had stolen classified information and passed it along to local law enforcement agencies and defense contractors. (Countryman Decl., Ex. 1.) According to the article, that information included "more than 100 FBI and Defense Department files," which revealed that the Islamic Center and other mosques were "monitored by a federal surveillance program targeting Muslim groups." (Id.)

The FOIA requests in this case sought information from the FBI, National Joint Terrorism Task Force ("NJTTF"), and any other Joint Terrorism Task Force ("JTTF") regarding the surveillance program, as well as details on whether the Islamic Center, CAIR, and Mr. Hopida had been monitored as part of this or any other program, and, if so, how, when, and why the monitoring was carried out, and by whom. [Doc. No. 25-2 at 4-5]. The requests also sought information regarding how any documents related to the surveillance were stored, disseminated, or destroyed. [Id.] Overall, the FBI processed a total of 491 pages of records responsive to the July 14, 2008 FOIA request. (Hardy Decl., ¶ 4.) Out of those, the FBI released 26 pages in full, 312 pages in part, and it withheld in full 153 ages.

Plaintiffs CAIR and Hopida commenced the present action on April 20, 2009, alleging violations of FOIA and Justice Department Regulations. [Doc. No. 1]. Defendants filed the current motion for summary judgment, on May 10, 2010. [Doc. No. 22]. In support of the motion, Defendants filed a detailed declaration from David M. Hardy, the Section Chief of the Record /

Information Dissemination Section ("RIDS"), Records Management Division ("RMD").  Mr. Hardy's declaration provides an explanation of the "FBI's record keeping system and the procedures used to search for records responsive to plaintiffs' requests to FBIHQ and the [San Diego Field Office ("SDFO")]." (Hardy Decl., ¶ 4.) The declaration also provides "justifications for the withholding of information from these records" pursuant to FOIA and Privacy Act exemptions. (Id.)

## LEGAL STANDARD

As explained in the Court's June 29, 2010 order, in an action brought under FOIA, the withholding agency bears the burden of proving it may withhold documents under one of the exemptions. 5 U.S.C. § 552(a)(4)(B); U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991). It may meet this burden by submitting affidavits showing that the information falls within the claimed exemption. Minier v. CIA, 88 F.3d 796, 800 (9th Cir.1996). "In evaluating a claim for exemption, a district court must accord 'substantial weight' to [agency] affidavits, provided the justifications for nondisclosure 'are not controverted by contrary evidence in the record or by evidence of [agency] bad faith.'" Id. (citation omitted).

## DISCUSSION

In the present case, the FBI withheld documents pursuant to FOIA exemptions 1, 2, 3, 4, 6, 7(A), 7(C), 7(D), and 7(E), and Privacy Act exemptions (j)(2) and (k)(2).  The Court will address each in turn.

### A.     Exemption 1

Exemption 1 protects from disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Exemption 1 thus "establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by executive order." Military Audit Project v. Casey, 656 F.2d 724, 737 (D.C. Cir. 1981); see also Epstein v. Kesor, 421 F.2d 930, 933 (9th Cir. 1970) ("The function of determining whether secrecy is required in the national interest is expressly assigned to the executive."). Accordingly,

to justify summary judgment, the agency affidavit invoking Exemption 1 must provide "detailed and specific" information showing both substantive and procedural compliance with the Executive Order at issue. See ACLU v. FBI, 429 F. Supp. 2d 179, 187 (D. D.C. 2006); accord Hiken v. Dep't of Defense, 521 F. Supp. 2d 1047, 1058 (N.D. Cal. 2007).

The Executive Order applicable to the documents in this case is the Executive Order 12,958, "Classified National Security Information," as amended by Executive Order 13,292. The requirements of classification under the Executive Order 12,958 are as follows:

(1)     an original classification authority is classifying the information;

(2)     the information is owned by, produced by or for, or is under the control of the United States Government;

(3)     the information falls within one or more of the categories of information listed in section 1.5 of this order; and

(4)     the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security and the original classification authority is able to identify or describe the damage.

E.O. 12,958, § 1.2(a). Mr. Hardy, who was designated by the Attorney General as an original classification and declassification authority pursuant to Executive Order 12,958, (Hardy Decl. ¶ 2), has determined that a number of the responsive documents in this case fell within the purview of Exemption 1 because they contain information relating to intelligence activities, sources, or methods. See Hardy Decl. ¶ 70; see also E.O. 13,292 § 1.4(c). Specifically, the FBI withheld the following types of classified information: (1) file numbers; (2) standard terminology or phraseology; (3) character of the case; (4) alpha designators; (5) intelligence sources; and (6) targets of foreign counterintelligence investigations. (Hardy Decl. ¶¶ 75-84.) In opposition, Plaintiffs do not challenge any specific category of the withheld documents; rather, Plaintiffs raise broad arguments that apply to all the categories. The Court will first discuss the extent to which Mr. Hardy's declaration establishes Exemption 1 as to each of the categories of withheld documents. The Court will then discuss Plaintiffs' arguments.

       *i.*    *FBI's justifications for non-disclosure pursuant to Exemption 1*

       File numbers

Mr. Hardy explains that FBI file numbers are assigned to specific intelligence activities

including "channelization" and "dissemination" instructions, the release of which would lead to the exposure of the particular intelligence activities at issue. (See Hardy Decl. ¶ 75.) Individual file numbers contain a geographical prefix or the originating office and a case number. (Id.) A case number includes a number corresponding to the type of investigation followed by a chronologically-assigned number corresponding to a specific investigation or activity. (Id.) According to Mr. Hardy, disclosure of file numbers would allow hostile analysts to attribute any information released from the documents containing such a file number to that particular file and then to identify the specific intelligence activity by supplying further missing pieces. (Id. ¶ 76.) From this information, "a partial mosaic of the activity begins to appear as more information is identified with the file leading to the exposure of actual current activities or methods." (Id.) Among other things, disclosure would also allow countermeasures to be implemented, making future operations more difficult, or compromise other ongoing planned intelligence operations. (Id.)

### Standard terminology / phraseology

Similarly, according to Mr. Hardy, disclosure of the standard terminology/phraseology used by the FBI in current cases risks revealing the scope and depth of the FBI's efforts in a particular intelligence investigation. (Id. ¶ 77.) Such disclosure would reveal to a target the level of information that has been learned about him, the limitations of the FBI's investigatory efforts concerning him, and the FBI's willingness to expend further resources and efforts on him, and the likelihood it will do so. (Id.) If the information described by this phraseology is shallow, yet the subject is heavily involved in matters under investigation, it alerts the subject to the fact that his activities may continue without fear or detection. (Id.) Conversely, if the information is substantial, it will prompt the subject to alter his/her course of conduct. (Id.)

### Character of the case

The FBI has also withheld information that identifies the character of the case for a specific type of intelligence activity directed at a specific target of national security interest. (Id. ¶ 78.) According to Mr. Hardy, Revealing this category of information could reasonably be expected to cause serious damage to the national security, as it would disclose a particular intelligence or

counterintelligence investigation, the nature, scope or thrust of the investigation, and the manner by which the intelligence or counterintelligence information was acquired. (Id.)

### Alpha designators

Alpha designators are "inserted into file numbers at the end of the FBI classification number to specify a subset of the file for record-keeping purposes." (Id. ¶ 79.) According to Mr. Hardy, disclosure of this information is reasonably likely to cause serious harm to the national security as it would identify the specific intelligence activity in use by the FBI to obtain information on an individual or organization of national security interest. (Id.)

### Intelligence sources

With respect to intelligence sources, the withheld information either identifies the source or is so specific to the source that its disclosure would reasonably be expected to reveal the source's identity. (Id. ¶ 81.) According to Mr. Hardy, disclosure of intelligence sources – whether current or former, alive or deceased – can reasonably be expected to chill individuals from serving as intelligence sources for fear that their identities will be revealed, jeopardizing the physical and emotional well-being of themselves, their families. and their associates. (Id. ¶ 82.) Therefore, the release of information tending to identify intelligence sources is reasonably expected to cause serious harm to the national security by resulting in current sources ceasing to provide information and discouraging potential sources from providing information in the future. (Id. ¶ 83.) Such a result would "eliminate one of the most crucial means of collecting intelligence information." (Id.)

### Targets of foreign counterintelligence investigations

Finally, according to Mr. Hardy, disclosure of information identifying targets of the FBI's foreign counterintelligence investigations "could permit hostile governments to appraise the scope, focus, location, target and capabilities of the FBI's intelligence-gathering methods and activities, and allow hostile agents to devise countermeasures to circumvent these intelligence activities or methods and render them useless." (Id. ¶ 83.)

   *ii. Plaintiffs' objections*

In opposition, Plaintiffs assert the FBI is not entitled to withhold the documents under Exemption 1 because Mr. Hardy's declaration in support thereof is "vague, general and

conclusory." (Pl. Opp. at 14-15.) For example, Plaintiffs argue subcategories like "standard terminology/phraseology," "character of the case," and "intelligence sources" are too amorphous and too broad to justify withholding the information. (Id. at 14.) In doing so, Plaintiffs rely on two cases from the D.C. Circuit. In Allen v. CIA, 636 F.2d 1287, 1292-93 (D.C. Cir. 1980), disavowed on other grounds in Founding Church of Scientology of Wash., D.C., Inc. v. Smith, 721 F.2d 828, 830 (D.C. Cir. 1983), the D.C. Circuit held that the agency affidavit's reliance on such expansive phrases as "intelligence sources and methods," "sequence of events," and "process" fell short of providing the required "reasonable specificity" for summary judgment without in camera review. Similarly, in King v. U.S. Dep't of Justice, 830 F.2d 210, 221-23 (D.C. Cir. 1987), the D.C. Circuit found deficient the agency's use of "far-ranging category definitions" and allegations that disclosure would result in a "myriad of damage possibilities for each category of classifiable information."

In the present case, however, Mr. Hardy's declaration is more specific than the examples provided by Plaintiffs. As shown above, although Mr. Hardy does rely on somewhat "amorphous" categories, all of those categories are defined for the Court and Plaintiffs. See, e.g., Hardy Decl. ¶ 75 (defining "file numbers" as individual numbers "assigned by FBIHQ and field offices and contain[ing] a geographical prefix or the originating office and case number, which includes the numerical characterization of the type of investigation followed by chronological number assigned to a specific investigation or activity"); id. ¶ 77 (defining "standard terminology or phraseology" as that "which appears in the most recent FBI investigations"); id. ¶ 78 (defining "character of the case" as "specific type of intelligence activity directed at a specific target of national security"); id. ¶ 79 (defining "alpha designator" as numbers that "are inserted into file numbers at the end of the FBI classification number to specify a subset of the file classification for record-keeping purposes"); id. ¶ 80 (defining an "intelligence source" as "an individual who provided or is currently providing information that pertains to national security matters"); id. ¶ 84 (defining "targets of foreign counterintelligence investigations" as "targets of current FBI foreign counterintelligence investigations"). Moreover, other courts have found these types of information to be protected by Exemption 1. See, e.g., ACLU v. FBI, 429 F. Supp. 2d at 188 (finding, after in

1   *camera* review, that properly invoked Exemption 1 "to prevent the publication of classified file

2   numbers, numerical designators, and names of classified operational units; and to prevent the

3   identification of counterintelligence targets, cooperating foreign governments, and foreign

4   relations information"); <u>Singh v. FBI</u>, 574 F. Supp. 2d 32, 42-43 (D. D.C. 2008) (concurring with

5   Mr. Hardy's determination that a redaction of a "numerical designator" was proper under

6   Exemption 1).

7        Undeterred, Plaintiffs argue that even if each category of information, taken individually,

8   may properly be withheld, the result should be different when the Court considers the *collective*

9   effect of withholding all of this information. In other words, the FBI might be justified in

10  withholding "standard terminology" when the identities of the targets are otherwise disclosed in

11  the document, because disclosure of that terminology might allow those targets to discover the

12  information the FBI has on them. However, when the identities of those targets are *already*

13  *withheld*, there is no justification in withholding the "standard terminology" *as well*, because the

14  mere disclosure of that terminology will not reveal anything about who or what the FBI is

15  investigating.  The Supreme Court has indicated that non-disclosure in this context may still be

16  appropriate because "bits and pieces" of information "'may aid in piecing together bits of other

17  information even when the individual piece is not of obvious importance in itself.'" <u>CIA v. Sims</u>,

18  471 U.S. 159, 178 (1985) (citation omitted). Thus, "what may seem trivial to the uninformed, may

19  appear of great moment to one who has a broad view of the scene and may put the questioned item

20  of information in its proper context." <u>Id.</u> (internal quotation marks and citation omitted).

21        Similarly, Plaintiffs' assertion that some of the information on the FBI's intelligence-

22  gathering methods is already publicly available is not sufficient by itself to warrant disclosure of

23  otherwise-properly exempted information. As examples, Plaintiffs point to the following sources:

24  (1) the Attorney General's Guidelines on General Crimes, Racketeering Enterprise and Terrorism

25  Enterprise Investigations, which discuss the different "investigative techniques" available to the

26  FBI, (Countryman Decl.. Ex. 8, at 75-77); (2) the FBI's Domestic Investigations and Operations

27  Guide, which discusses the authorized investigative methods in preliminary and full investigations,

28  (id., Ex. 9, at 89-91, 94-96); and (3) several newspaper articles discussing FBI's surveillance of

1  Islamic individuals and groups, (id., Exs. 1, 4, 5, 6). All of these sources, however, provide either

2  *general* information on the FBI's intelligence-gathering methods or *second-hand accounts* of the

3  FBI's investigative efforts. There is no basis, and Plaintiffs have supplied none, to believe that the

4  publicly available information is as specific as the information that the FBI seeks to withhold.

5  Accordingly, Plaintiffs cannot defeat an otherwise-valid application of Exemption 1. See

6  Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990) (noting that before release of an otherwise

7  "officially acknowledged" information may be compelled, three criteria must be satisfied: (1) "the

8  information requested must be as specific as the information previously released;" (2) "the

9  information requested must match the information previously disclosed;" and (3) "the information

10  requested must already have been made public through an official and documented disclosure"

11  (citation omitted)).

12      Based upon Mr. Hardy's declaration, as well as the Court's *in camera* review of the

13  withheld documents, the Court concludes Defendants properly asserted Exemption 1 with regard

14  to each of the categories of information discussed above.

15      B.    Exemption 2

16      Exemption 2 allows the agency to withhold information "related solely to the internal

17  personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The Ninth Circuit has held that

18  this exemption applies to any "predominantly internal" materials whose release would "present a

19  risk of circumvention of agency regulations," Milner v. U.S. Dep't of Navy, 575 F.3d 959, 965

20  (9th Cir. 2009) (citing Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051 (D.C.

21  Cir. 1981) (en banc)), as well as any information concerning "trivial administrative details of no

22  genuine public interest," Prof'l Programs Group v. Dep't of Commerce, 29 F.3d 1349, 1351 (9th

23  Cir. 1994). The former category is known as "High 2," while the latter is known as "Low 2."

24  Milner, 575 F.3d at 963. In this case, the FBI has invoked both "High 2" and "Low 2."

25      The FBI has invoked Exemption 2 with respect to the following types of information:

26  (1) internal FBI telephone and facsimile numbers; (2) source symbol numbers and informant file

27  numbers; (3) internal questionnaire; (4) identity and location of units and information pertaining to

28  internal dissemination of information; (5) dates and types of investigations and basis for the

1  initiation of investigations; and (6) FBI investigative tools and techniques. (Hardy Decl. ¶ 87.)

2  Plaintiffs only challenge the non-disclosure of the following: (1) an internal questionnaire,

3  (2) information related to dissemination of information to policy making agency officials,

4  (3) information concerning the dates and types of investigations and the basis for initiating each of

5  them, and (4) information regarding investigative tools and techniques. (Pl. Opp., at 19.)

6                    *i.*    *Internal questionnaire*

7          The FBI invoked "High 2" exemption to protect from disclosure a questionnaire, prepared

8  by a FBI Special Agent, containing specific questions and recommendations to be followed by FBI

9  Special Agents assisting in the investigation reported in the documents at issue here. (Hardy Decl.

10  ¶ 91.) The questionnaire is an internal tool created for this particular investigation to ensure a more

11  efficient collection of intelligence. (Id.) According to Mr. Hardy, release of this questionnaire

12  would disclose the investigative interest of a current national security investigation, thereby

13  permitting circumvention of the law by alerting subjects of the investigation to the FBI's

14  investigative interests. (Id.)  Releasing this information would disrupt the method of the

15  investigative process and deprive the FBI of valuable information. (Id.) Moreover, according to

16  Mr. Hardy, this questionnaire "relates solely to the internal practices of the FBI." (Id.) The FBI

17  also asserted Exemption 7(E) as an additional basis for withholding this information. (Id.)

18          The Court finds the FBI properly withheld the internal questionnaire. First, because the

19  questionnaire is "an internal tool created for this particular investigation in order to ensure a more

20  efficient collection of intelligence," (Hardy Decl. ¶ 91), there is little doubt that it is

21  "predominantly internal" as required by Exemption 2. See Milner, 575 F.3d at 965. The question,

22  therefore, is whether its disclosure would "present a risk of circumvention of agency regulations."

23  See id. In the present case, this hurdle is easily satisfied. Mr. Hardy's declaration indicates the

24  questionnaire "contains specific questions and recommendations to be followed by the [Special

25  Agents] assisting in these investigations." (Hardy Decl. ¶ 91.) If disclosed, this undoubtedly would

26  allow the targets of these investigations to avoid the specific questions and methods recommended

27  in the questionnaire. Moreover, even if the names of the targets are redacted, people

28  knowledgeable of the facts might still be able to figure out the overall "pattern," which would

1   facilitate the "circumvention of agency regulations." See Milner, 575 F.3d at 965; cf. Sims, 471

2   U.S. at 179-80 ("[A]n observer who is knowledgeable about a particular intelligence research

3   project . . . could, upon learning that research was performed at a certain institution, often deduce

4   the identities of the individual researchers who are protected 'intelligence sources'").

5              ii.      Internal dissemination information

6              The FBI has withheld information pertaining to the dissemination of information within

7   FBI pursuant to Exemption 2. (Hardy Decl. ¶ 94.) According to Mr. Hardy, disclosure of this

8   information "could potentially reveal the scope of current national security investigations, as well

9   as the FBI components involved." (Id.) "Release of this information would alert current subjects of

10  national security investigations who could use this information to their advantage by adjusting

11  behaviors and using countermeasures to avoid detection, which could allow circumvention of the

12  law." (Id.) The FBI also asserted Exemption 7(E) as an additional basis for withholding this

13  information. (Id.)

14             In opposition, Plaintiffs once again assert that FOIA exemptions cannot be used to protect

15  surveillance programs targeting individuals based on religion or other First Amendment rights. (Pl.

16  Opp., at 20-21.) Plaintiffs argue "[t]he public has a substantial interest in determining which

17  agency officials knew about and approved such a program, particularly if the officials are higher

18  ranking policymakers." (Id. at 21.)

19             The Court finds the FBI properly withheld the information pertaining to internal

20  dissemination of information. First, this information satisfies the "predominantly internal"

21  requirement, see Milner, 575 F.3d at 965, because it relates to the "*internal* dissemination of

22  information within FBI components." (Hardy Decl. ¶ 94 (emphasis added).) Moreover, the FBI

23  reasonably asserts that disclosure of this information would allow the targets of investigations to

24  adjust their behavior, (see Hardy Decl. ¶ 94), and thereby increase the "risk of circumvention of

25  agency regulations." See, e.g., Durrani v. U.S. Dep't of Justice, 607 F. Supp. 2d 77, 89 (D. D.C.

26  2009) (concluding that the ICE properly redacted as "high 2" information "'relating to the

27  coordination of investigative efforts with other law enforcement agencies, investigative procedures

28  and coordination amongst agency field offices regarding the conducting of investigative

1  activities'" (citation omitted)).

2      *iii.*  *Dates and types of investigations and basis for initiating them*

3    The FBI has also invoked "High 2" to withhold information relating to the dates and bases

4  for the initiation of investigations, and the designation of individual investigations as

5  "Preliminary" or "Full Field" investigations. (Hardy Decl. ¶ 95.) According to Mr. Hardy, this

6  information, when referenced together with an actual investigation, would permit individuals to

7  know what types of activities trigger the initiation of an investigation or trigger a full field

8  investigation or simply a preliminary investigation, thereby permitting individuals to adjust their

9  behavior to avoid detection and circumvent the law. (Id.) Such avoidance and circumvention

10  would impede the FBI's investigative effectiveness. (Id.) The FBI also asserted Exemption 7(E) as

11  an additional basis for withholding this information. (Id.)

12    Plaintiffs oppose the non-disclosure of this information, arguing it "goes to the heart of the

13  plaintiff's FOIA requests." (Pl. Opp., at 21.) According to Plaintiffs, if the basis for initiating the

14  investigation is the target's religion or First Amendment-protected activity, then the information is

15  not properly withheld. (Id.) Moreover, Plaintiffs argue there is "a strong public interest in

16  disclosure of the information" in this context. (Id.) Specifically, the date and type of such

17  investigations is important to assist the public in determining *when* the decision to monitor

18  individuals based on religion was adopted, and whether any such monitoring still continues

19  today.(Id.)

20    The Court finds the FBI properly withheld the information relating to the dates and types

21  of investigations as well as the basis for initiating them. First, it could reasonably be assumed the

22  dates and types of FBI investigations would necessarily be a "predominantly internal" information.

23  Similarly, the FBI reasonably asserts that disclosure of this information would inform the targets

24  of what types of activities trigger the initiation of what type of an investigation, (see Hardy Decl.

25  ¶ 95), thereby allowing them to circumvent those investigations as well as the agency regulations.

26  See Milner, 575 F.3d at 965.

27      *iv.*  *Investigative tools and techniques*

28    Finally, pursuant to Exemption 2, the FBI has withheld information pertaining to

- 12 -

1    investigative tools, techniques, and procedures used in national security investigations. (Hardy

2    Decl. ¶ 96.) According to Mr. Hardy, while some of these techniques and procedures may be

3    known to the public, disclosure of additional details referenced in the documents at issue could

4    risk circumvention of the law, particularly with respect to disclosure of the specific techniques and

5    procedures being used by the FBI in ongoing investigations. (Id.) As these techniques and

6    procedures are "indispensable tool[s] for the FBI's effective collection of intelligence," their

7    release is likely to cause "substantial harm" to law enforcement. (Id.) Moreover, the release of this

8    information would alert current investigative targets to the specific activities being investigated

9    and the methods for their investigation, permitting those targets to adjust their behaviors and

10   employ countermeasures to avoid detection. (Id.) The FBI has also withheld this information

11   pursuant to Exemption 7(E). (Id.)

12        In opposition, Plaintiffs argue that if the use of a technique is already "commonly known,"

13   there is no increased risk of circumvention of the law by revealing more detail about the technique.

14   (Pl. Opp., at 22.)  Moreover, Plaintiffs argue that they are not seeking disclosure of identities of

15   targets or activities that are in preparation for illegal behavior. (Id. at 23.) Rather, Plaintiffs only

16   want disclosure of the FBI tools and techniques used to investigated generic and law-abiding

17   activities, such as attending a service at the Islamic Center. (Id.)

18        The Court finds the FBI properly withheld the information pertaining to the investigative

19   tools and techniques. The information in this category clearly satisfies the "predominantly

20   internal" requirement. See Milner, 575 F.3d at 965. Similarly, disclosure of investigative tools and

21   techniques undoubtedly would lead to circumvention of the law. See Durranti, 607 F. Supp. 2d at

22   89. Finally, contrary to Plaintiffs' arguments, Exemption 2 may be invoked even with respect to

23   *publicly-known* investigative techniques and procedures. See Conception v. FBI, 606 F. Supp. 2d

24   14, 43-44 (D. D.C. 2009).

25        C.       Exemption 3

26        FOIA Exemption 3 protects from disclosure information for which disclosure is prohibited

27   by *another* statute, if that statute either: (A) "requires that the matters be withheld from the public

28   in such a manner as to leave no discretion on the issue;" or (B) "establishes particular criteria for

withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A), (B). In this case, the FBI relies on the Bank Secrecy Act, 31 U.S.C. § 5311 *et seq.*, to withhold information obtained from the Financial Crimes Enforcement Network ("FinCEN"). (Hardy Decl. ¶¶ 98-101.) Other courts have found such information to be exempt from disclosure pursuant to Exemption 3. See Davis v. U.S. Dep't of Justice, No. Civ. A. 00-2457 (CKK), 2003 WL 25568468, at *5 (D. D.C. 2003); see also Cozen O'Connor v. U.S. Dep't of Treasury, 570 F. Supp. 2d 749, 775-76 (E.D. Pa. 2008); Berger v. I.R.S., 487 F. Supp. 2d 482, 496 (D. N.J. 2007). Moreover, Plaintiffs make no objection to this non-disclosure. Accordingly, the Court finds the FBI properly withheld the information pursuant to Exemption 3.

D.      Exemption 6

Exemption 6 protects from disclosure information contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 requires the government to balance the individual's right to privacy against the public's interest in disclosure. See Dep't of Air Force v. Rose, 425 U.S. 352, 372 (1976); Hunt v. FBI, 972 F.2d 286, 287 (9th Cir. 1992). The balancing analysis required by Exemption 6 is similar to that required by Exemption 7(C), which permits withholding "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Pursuant to its typical practice, the FBI has asserted Exemption 6 in conjunction with Exemption 7(C). (Hardy Decl., at 58 n.21.)

In the present case, the FBI has invoked Exemptions 6 and 7(C) to withhold names and identifying information of FBI support personnel and special agents, non-FBI federal law enforcement employees, local law enforcement employees, third parties who provided information to the FBI, third parties of investigative interest, and third parties merely mentioned (but not of investigative interest). (Hardy Decl. ¶¶ 128-43.) Because Plaintiffs discuss this exemption in conjunction with the Exemption 7(C), the Court will do the same below.

///

1    E.    Exemption 7

2    Exemption 7 includes six different exemptions, A through F, all of which share the

3    threshold requirement that the withheld record be "compiled for law enforcement purposes."

4    Rosenfeld v. U.S. Dep't of Justice, 57 F.3d 803, 808 (9th Cir. 1995); 5 U.S.C. § 552(b)(7). The

5    government's burden is easier to satisfy under Exemption 7, than it is for other exemptions.

6    Rosenfeld, 57 F.3d at 808. In the Ninth Circuit, law enforcement agencies such as the FBI are

7    accorded "special deference" in an Exemption 7 determination. Binion v. U.S. Dep't of Justice,

8    695 F.2d 1189, 1193 (9th Cir. 1983). Accordingly, Exemption 7 requires "an agency with a clear

9    law enforcement mandate such as the FBI [to] establish only a 'rational nexus' between its law

10   enforcement duties and the document for which Exemption 7 is claimed." Id. at 1194. "As long as

11   the agency's basis for the 'rational nexus' is not 'pretextual or wholly unbelievable', a court

12   'should be hesitant to second guess a law enforcement agency's decision to investigate if there is a

13   plausible basis for its decision.'" Wilkinson v. FBI, 633 F. Supp. 336, 342 (C.D. Cal. 1986)

14   (quoting Pratt v. Webster, 673 F.2d 408, 421 (D.C. Cir. 1982)); accord Dunaway v. Webster, 519

15   F. Sup.. 1059, 1076 (N.D. Cal. 1981) ("[A]n agency with a clear law enforcement purpose . . .

16   need only be held to a minimal showing that the activity which generated the documents was

17   related to the agency's function." (citations omitted)). In this case, the FBI withheld information

18   pursuant to Exemptions 7(A), (C), (D), and (E).

19            i.    Exemption 7(A)

20   Exemption 7(A) protects from disclosure "records or information compiled for law

21   enforcement purposes . . . to the extent that the production of such law enforcement records or

22   information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C.

23   § 552(b)(7)(A). Under this exemption, "'the government is not required to make a specific factual

24   showing with respect to each withheld document that disclosure would *actually interfere* with a

25   particular enforcement proceeding," but "need only make a general showing that disclosure of its

26   investigatory records would interfere with its enforcement proceedings." Lewis, 823 F.2d at 380

27   (citations omitted). Crucial to FBI's burden is the requirement that it establish that disclosure of

28   the documents "would interfere with *pending* enforcement proceedings." See Id. (emphasis

1   added).  However, that requirement is balanced against the agency's legitimate law enforcement

2   interest in not jeopardizing its pending proceedings.  Lion Raisins v. U.S. Dep't of Agriculture,

3   365 F.3d 1072, 1084 (9th Cir. 2004).

4          In the present case, the FBI withheld the following categories of information pursuant to

5   Exemption 7(A): evidentiary/investigative materials; confidential source statements; exchange of

6   information between various local, state, or federal agencies; information concerning documentary

7   and physical evidence; administrative materials; reporting communications; miscellaneous

8   administrative documents; administrative instructions; and public source material – found within

9   documents belonging to one of the following nine categories – Letterhead Memoranda; Electronic

10  Communication; FD-302 Interview Form; FBI Investigative Inserts and/or Reports; FBI Records

11  Checks; Forms Concerning Confidential Sources; FD-71 (Complaint Form); Business Records;

12  and FD-340/1A Exhibit. (Hardy Decl. ¶¶ 110, 114-24.)

13         As explained in the Hardy Declaration, the FBI Case Agent who is responsible for the

14  pending investigations that are related to the information reported in the records at issue here has

15  advised that these investigations are currently still pending and actively being pursued. (Id. ¶ 111.)

16  It is the position of this Case Agent that premature release of the information in the records at issue

17  here would harm this and other ongoing investigations by enabling the identification of targets,

18  sources, scope of investigations, and investigative strategies, which would permit the targets to

19  evade detection, thereby interfering with these ongoing investigations. (Id.) The Case Agent has

20  determined that until the conclusion of any and all potential future and currently pending law

21  enforcement proceedings derived from these investigations, no additional information can be

22  released. (Id.)

23         The FBI has identified the following potential harms to be associated with release of

24  information for which the FBI has invoked Exemption 7(A): identification of the subject matter

25  involving classified information; identification of individuals and potential witnesses possessing

26  information relevant to the investigations and possible harm to, or intimidation of these

27  individuals; use of released information to counteract evidence developed by investigators, to alter

28  or destroy potential evidence, or to create false evidence; use of released information by any

1   investigative subject to assess the likelihood that he or she may be prosecuted and/or convicted in

2   connection with the investigation; and general interference with pending prosecutions through

3   third-party harassment, intimidation, and creation of false evidence to contradict facts discussed in

4   the FBI's investigation. (Id. at ¶¶ 112-13; see also id. at ¶¶ 114-24 (describing specific potential

5   harms associated with the release of particular categories of withheld information).)

6          Plaintiffs' main objection to this non-disclosure is that the agencies have failed to establish

7   the investigation described in the documents they have processed is actually "pending," or even

8   adequately define what that term means. (Pl. Opp., at 24.) According to Plaintiffs, the only

9   "evidence" presented to this effect is a paragraph in Mr. Hardy's declaration describing a

10  conversation with another FBI Case Agent, which is inadmissible hearsay that cannot be used to

11  support a summary judgment motion and should be stricken from the record. See FED. R. CIV.

12  PROC. 56(e)(1). Moreover, even if the testimony were admissible, Plaintiffs argue it is vague and

13  does not provide enough detail to ensure Exemption 7(A) has been properly invoked. (Pl. Opp., at

14  24.)

15         Generally, "'[a]n affidavit from an agency employee responsible for supervising a FOIA

16  search is all that is needed to satisfy' the personal knowledge requirement of Federal Rule of Civil

17  Procedure 56(e)." Lahr v. National Transp. Safety Bd., 569 F.3d 964, 989 (9th Cir. 2009) (quoting

18  Carney v. U.S. Dep't of Justice, 19 F.3d 807, 814 (2d Cir. 1994)). Here, Mr. Hardy's declaration

19  establishes the FBI has properly invoked Exemption 7(A) because there is a pending investigation

20  related to the requested information, and premature release of the information would harm that

21  investigation. The FBI has identified specific potential harms associated with the release of the

22  information. In addition, upon in camera review, the Court concludes the documents themselves

23  corroborate Mr. Hardy's declaration and confirms the FBI properly withheld the information

24  pursuant to Exemption 7(A).

25                  ii.      Exemption 7(C)

26         As previously noted, Exemption 7(C) allows the agency to withhold "records or

27  information compiled for law enforcement purposes . . . to the extent that the production of such

28  law enforcement records or information . . . could reasonably be expected to constitute an

unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Similar to Exemption 6, this exemption requires the agency to balance the relevant individual privacy rights against the public interest in disclosure. See Rose, 425 U.S. at 372; Hunt, 972 F.2d at 287. The balancing must be made on a case-by-case basis. See Stern, 737 F.2d at 92.

In the present case, the FBI has invoked Exemption 7(C) for withholding names and identifying information of FBI support personnel and special agents, non-FBI federal law enforcement employees, local law enforcement employees, third parties who provided information to the FBI, third parties of investigative interest, and third parties merely mentioned (but not of investigative interest). (Hardy Decl. ¶¶ 128-43.) According to Mr. Hardy, the individuals to whom the information pertains have significant privacy interests in preventing disclosure of the information, and disclosure of the information would not advance any public interest. (See id.)

Plaintiffs object to the invocation of Exemption 7(C) with respect to the identities of: (1) higher-level FBI personnel referenced in the documents, (2) local law enforcement agencies and policy making employees, (3) sources of information where there is no assurance of confidentiality, (4) third-parties of investigative interest, and (5) third parties who are merely mentioned under Exemptions 7(C). (Pl. Opp., at 26.) In particular, Plaintiffs once again seek disclosure of "policy making officials or supervisors that approved use of a particular investigative technique (e.g., selecting targets based on religion or politics)." (Id.) Plaintiffs specifically note that they are not seeking the names of "lower level employees," as long as those employees played no role in policy decisions. (Id.) Similarly, Plaintiffs seek the identity of agencies other than the FBI whose officials are referenced in the documents. (Id.) Finally, Plaintiffs seek disclosure of third parties, to the extent those parties were the targets of any unlawful government surveillance. (Id.) Plaintiffs argue the public interest in such a case favors disclosure because it would allow those individuals to "pursue any appropriate legal remedies for unconstitutional behavior carried against them." (Id. at 27.)

Upon review, the Court find the FBI properly withheld the information pursuant to Exemption 7(C). As the Ninth Circuit has indicated, an agency need not identify specific harms likely to follow from disclosure for each individual document withheld. See Lewis, 823 F.2d at

380. Rather, all it has to do is establish there is a "rational nexus" between its law enforcement duties and the document for which Exemption 7 is claimed. <u>Binion</u>, 695 F.2d at 1193. In the present case, Mr. Hardy's detailed declaration establishes that "rational nexus." (<u>See</u> Hardy Decl. ¶¶ 128-43.)

Moreover, Plaintiffs have not carried their burden of demonstrating the public interest in this case outweighs the agency's decision to withhold the information. In considering the personal privacy interests at stake, the Supreme Court has emphasized that "the concept of personal privacy under Exemption 7(C) is not some limited or cramped notion of that idea." <u>Nat'l Archives & Records Admin. v. Favish</u>, 541 U.S. 157, 165 (2004) (citation omitted). Instead, personal privacy interests encompass a broad range of concerns relating to an "individual's control of information concerning his or her person," and an "interest in keeping personal facts away from the public eye." <u>U.S. Dep't of Justice v. Reporters Comm. for Freedom</u>, 489 U.S. 749, 763, 769 (1989). Once the government has identified a cognizable privacy interest, "'the *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to.'" <u>See</u> <u>Lahr</u>, 569 F.3d at 974 (quoting <u>Bibles v. Or. Natural Dessert Ass'n</u>, 519 U.S. 355, 355-56 (1997) (per curiam)). "[T]he requester must establish 'more than a bare suspicion' of wrongdoing, by 'produc[ing] evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" <u>Id.</u> (quoting <u>Favish</u>, 541 U.S. at 174).

In the present case, the FBI has established that valid privacy concerns justify withholding the names of the FBI Special Agents and support personnel, non-FBI federal law enforcement employees, local law enforcement employees, third parties who provided information to the FBI, third parties of investigative interest, and third parties merely mentioned. (<u>See</u> Hardy Decl. ¶¶ 131, 133, 135, 137, 139, 141, 142.) The FBI has also established why in each case the public interest does not trump those privacy concerns. (<u>See</u> <u>id.</u> ¶¶ 132, 134, 136, 138, 140, 141, 143.) Because Plaintiffs have failed to produce anything more than "a bare suspicion" of wrongdoing, the Court finds the FBI properly withheld this information pursuant to Exemption 7(A). <u>See</u> <u>Lahr</u>, 569 F.3d

1    at 974.

2            iii.    *Exemption 7(D)*

3            Exemption 7(D) allows an agency to withhold "records or information compiled for law

4    enforcement purposes . . . to the extent that the production of such law enforcement records or

5    information . . . could reasonably be expected to disclose the identity of a confidential source . . .

6    and, in the case of a record or information compiled by criminal law enforcement authority in the

7    course of a criminal investigation . . . , information furnished by a confidential source." 5 U.S.C. §

8    552(b)(7)(C). Unlike Exemption 7(C), Exemption 7(D) requires no balancing of private and public

9    interests. See, e.g., Peltier v. FBI, 563 F.3d 754, 766 (8th Cir. 2009); McDonnell v. United States,

10   4 F.3d 1227, 1257 (3d Cir. 1993). Rather, Exemption 7(D) applies if the agency establishes that a

11   source has provided information under either an express or implied promise of confidentiality. See

12   DOJ v. Landano, 508 U.S. 165, 179-80 (1993) (endorsed by the Ninth Circuit in Rosenfeld, 57

13   F.3d at 814). Importantly, Congress has clearly explained and the courts have repeatedly found

14   that application of a "robust" Exemption 7(D) is important to ensure that "confidential sources are

15   not lost through retaliation against the sources for past disclosure or because of the sources' fear of

16   future disclosure." See, e.g, Brant Const. Co. v. EPA, 778 F.2d 1258, 1262 (7th Cir. 1985).

17           In this case, the FBI has invoked Exemption 7(D) to withhold names and identifying

18   information of individuals who have provided information to the FBI under an express assurance

19   of confidentiality, (Hardy Decl. ¶¶ 152-53), or who have provided information to the FBI under

20   circumstances which make it reasonable to assume an implied assurance of confidentiality, (id. ¶

21   154 (explaining that, based on fact that these informants provided information related to terrorist

22   activities as well as circumstances in which they provided such information, it is reasonable to

23   assume they did so based on implied assurance of confidentiality)). According to Mr. Hardy,

24   revealing the identities of these informants likely would expose them to embarrassment,

25   harassment, or violent reprisal, and would not shed light on the FBI's internal operations and

26   activities. (Hardy Decl. ¶ 155.) Moreover, withholding such identifying information is essential to

27   the FBI's ability to continue to employ confidential sources. (Id.)

28           Finally, the FBI invoked Exemption 7(D) to protect the names and identifying information

of telecommunications companies, internet service providers, and financial institutions which have

provided information to the FBI in furtherance of the FBI's criminal and national security

investigations. (Id. ¶¶ 145-46, 154-55; id., Ex. KK, at ACLU-249 and ACLU-330.)  These

companies provided information to the FBI under implied assurances of confidentiality, and face a

risk of reprisal – in the form of serious competitive harm – if their identities are disclosed. (Id.

¶ 154.)  Disclosure of the identity of these companies would hamper the FBI's ability to obtain

necessary information in the future because the companies would be hesitant to furnish

information to the FBI if they knew their participation would eventually be disclosed to the public.

(Id.)

The Supreme Court in Landano, 508 U.S. at 176, rejected the argument that "an assurance

of confidentiality can be inferred whenever an individual source communicates with the FBI

because of the risk of reprisal or other negative attention inherent in criminal investigations."

Instead, the agency must explain why, in the particular case, there was an implied assurance of

confidentiality, although it may rely on factors such as "the nature of the crime investigated and

the witness' relation to it." Landano, 508 U.S. at 180. In the present case, the FBI has carried its

burden with regard to any individual informants because it is reasonable to infer that an informant

in a terrorism case would assume confidentiality based on the "nature of the crime investigated."

See Wilkinson, 633 F. Supp. at 347 ("[W]here a source is interviewed by the FBI about a criminal

suspect in an ongoing investigation, it may be reasonable to infer, absent evidence in the

documents to the contrary, that such a source would assume confidentiality." (citation omitted)).

"In such cases, one could assume that 'the source would hardly have supplied the information

unless it were confident that its identity would remain concealed.'" See id. (quoting Iglesias v.

CIA, 525 F. Supp. 547, 564 (D. D.C. 1981)); accord Massey v. FBI, 3 F.3d 620, 623 (2d Cir.

1993) ("Landano noted that courts may look to the risks an informant might face were her identity

disclosed, such as retaliation, reprisal or harassment, in inferring confidentiality." (citation

omitted)). Contrary to Plaintiffs' allegations, this is far from a "blanket rule" that the Supreme

Court rejected in Landano, 508 U.S. at 181.

Based solely upon Mr. Hardy's declaration, however, the Court had some concern about

1   the FBI's assertion of the 7(D) exemption with regard to entities, including telecommunications

2   companies, internet providers, and financial institutions, who provided information to the FBI

3   based upon an implied assurance of confidentiality.  In withholding the identities of the

4   commercial and financial institutions who provided information to the FBI, Defendants broadly

5   argue the disclosure would "likely cause substantial harm to the competitive position of the

6   companies." (Def. Motion, at 28.) However, the cases cited in support of this conclusion are

7   inapposite. In both Jones v. FBI, 41 F.3d 238, 248 (6th Cir. 1994), and Hudson, 2005 WL

8   1656909, at **5-6, the invocation of Exemption 7(D) was in the context of an *express*

9   confidentiality agreement with a commercial institution, not an *implied* one as is the issue here.

10      Nonetheless, the Court has reviewed the documents *in camera*, and concludes the implied

11  claim of confidentiality with respect to commercial institution is supported.  The Court notes the

12  exemption is claimed sparsely with regard to commercial institutions. In addition, for each

13  instance the FBI claims Exemption 7(D) for commercial institutions, it also claims other

14  Exemptions which justify withholding the information from production. Finally, upon review, the

15  Court concludes the FBI's assertion that disclosure of the information would "likely cause

16  substantial harm to the competitive position of the companies" is well-founded. Therefore, the

17  Court finds the  FBI properly withheld such information under Exemption 7(D).

18          iv.      Exemption 7(E)

19      Finally, Exemption 7(E) allows the agency to withhold "records or information compiled

20  for law enforcement purposes . . . to the extent that the production of such law enforcement records

21  or information . . . would disclose techniques and procedures for law enforcement investigations or

22  prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if

23  such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C.

24  § 552(b)(7)(E). In the Ninth Circuit, to invoke Exemption 7(E), "the government must make two

25  showings: (1) that the records were compiled for a law enforcement purpose, and (2) that the

26  records reveal law enforcement techniques or guidelines that, if disclosed, 'could reasonably be

27  expected to risk circumvention of the law.'" Gordon v. FBI, 388 F. Supp. 2d 1028, 1035 (N.D.

28  Cal. 2005) (citing Hardy v. Bureau of Alcohol, Tobacco & Firearms, 631 F.2d 653, 656 (9th Cir.

1980)). Further, courts have held Exemption 7(E) applies even when the identity of the techniques has been disclosed, but the manner and circumstances of the techniques are not generally known, or the disclosure of additional details could reduce their effectiveness. See Bowen v. U.S. Food & Drug Admin., 925 F.2d 1225, 1228-29 (9th Cir. 1991) (upholding invocation of Exemption 7(E) to withhold even publicly-known investigative techniques and procedures when disclosure would reveal additional details that would hamper future agency investigations).

In this case, the FBI has invoked Exemption 7(E) to prevent disclosure of investigative techniques and procedures, an internal questionnaire used by FBI Special Agents to guide their investigations, information pertaining to the location and identity of investigative units, information pertaining to the internal dissemination of information, and information pertaining to the dates and types of investigations and the basis for the initiation of investigations. (Hardy Decl. ¶¶ 157-160; see also id. ¶¶ 91-96.)

Plaintiffs challenge this once again focusing on the FBI's alleged investigative techniques and procedures that use religion or politics to select targets. (Pl. Opp., at 29.) According to Plaintiffs, Defendants have not shown that the knowledge of *these* techniques could reasonably be expected to risk circumvention of the law. (Id.) Moreover, Plaintiffs argue Defendants provide a generic and boilerplate list of risks and potential harms. (Id.)

As previously noted, there is little support for Plaintiffs' allegations that the non-disclosure is improper because Defendants have not accounted for allegedly illegal activities. Moreover, the documents at issue here are the same as those discussed above with respect to Exemption 2. Accordingly, for the same reasons as discussed with respect to Exemption 2, and especially in light of the lesser burden on the FBI with respect to Exemption 7, see Rosenfeld, 57 F.3d at 808, the Court finds the FBI properly withheld these documents.

### *Conclusion*

For the reasons set forth herein, following *in camera* review, the Court concludes the FBI properly withheld documents under the asserted Exemptions. Thus, Defendants' motion for

///

///

1   summary judgment is GRANTED, terminating this case. The documents will be returned to the

2   U.S. Department of Justice Litigation Security Group to maintain pending any appeal.

3           **IT IS SO ORDERED**.

4   **DATED:  October 12, 2010**

5                                       _Irma E. Gonzalez_

6                                       **IRMA E. GONZALEZ, Chief Judge**
                                        **United States District Court**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09cv823-IEG (CAB)